IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BROCK TYLER BANNISTER, | CIVIL NO. 20-00305 JAO-RT |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |
| vs. | |
| DAVID IGE, et al., | |
| Defendants. | |

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Pro se Plaintiff Brock Tyler Bannister ("Plaintiff"), a South Carolina resident, challenges Defendant Governor David Ige's ("Defendant Ige") Emergency Proclamations regarding COVID-19 as unconstitutional under the Fourteenth Amendment to the Constitution. Plaintiff requests injunctive relief in the form of an exemption from the 14-day quarantine for himself, his wife, and his two minor children. For the following reasons, the Court DENIES Plaintiff's Motion for Preliminary Injunction.[1]

---

[1] Because the Motion will be moot if not addressed before the conclusion of Plaintiff's quarantine, the Court handles it on an expedited basis. A request of this nature would ordinarily be presented as a motion for temporary restraining order.

BACKGROUND

Like many states across the nation and countries around the world, Hawaiʻi

has issued a series of Emergency Proclamations "to limit the spread of COVID–19,

a novel severe acute respiratory illness" with "no known cure, no effective

treatment, and no vaccine."  *S. Bay United Pentecostal Church v. Newsom*, 140 S.

Ct. 1613, 1613 (2020) (mem.) (Roberts, C.J., concurring).  Further complicating

efforts to contain COVID-19 is the fact that individuals who are "infected but

asymptomatic . . . may unwittingly infect others."  *Id.*

The United States leads the world in COVID-19 cases and deaths by a large

margin, with 3,935,211 cases and 142,595 deaths, *see* https://coronavirus.jhu.edu/

map.html (last visited July 22, 2020), and nearly all states are experiencing

increases.  *See* https://www.npr.org/sections/health-shots/2020/03/16/816707182/

map-tracking-the-spread-of-the-coronavirus-in-the-u-s (last visited July 22, 2020).

I.   Factual History

A.   Bannister Family

Plaintiff and his family arrived in Honolulu on July 9, 2020 and are subject

to the State's 14-day quarantine through July 23, 2020.[2]  Compl. at 2.  Plaintiff is

vacationing at a rental home in Laie for 36 days, or until August 13, 2020, at a cost

---

[2]  At the July 17, 2020 Status Conference, defense counsel explained that the 14-day count starts the day after arrival.

of $10,508.68. *Id.* He complains that the quarantine—of which he was aware

before traveling here—will cause him to lose 40% of his vacation time in Hawaiʻi.

*Id.* According to Plaintiff, "[t]ime is a finite resource, and each minute that [he] and

[his] family spend under a mandatory quarantine, which [he] believe[s] the law

demonstrates to be unlawful, steals from [them] precious moments that [they] will

never gain back and no amount of money can purchase." *Id.* at 6.

      B.   <u>Emergency Proclamations</u>

As COVID-19 appeared in Hawaiʻi, Defendant Ige issued an Emergency

Proclamation on March 4, 2020, authorizing the expenditure of State monies, and

suspending specified Hawaiʻi statutes. *See* https://governor.hawaii.gov/wp-

content/uploads/2020/03/2003020-GOV-Emergency-Proclamation_COVID-19.pdf

(last visited July 22, 2020).

On March 21, 2020, Defendant Ige issued a Second Supplementary

Proclamation that imposed a 14-day quarantine, effective March 26, 2020,

applying to *all persons entering Hawaiʻi*, both residents and non-residents alike,

with a few exceptions related to emergency and critical infrastructure functions.

*See* https://governor.hawaii.gov/wp-content/uploads/2020/03/2003152-

ATG_Second-Supplementary-Proclamation-for-COVID-19-signed.pdf (last visited

July 22, 2020). Defendant Ige's Eighth Supplementary Proclamation, issued on

May 18, 2020, excepted from the quarantine individuals entering Hawaiʻi "by

3

recreational boats which have been at sea for at least 14 consecutive days before entering State waters and have no persons on board that are ill or are exhibiting symptoms of COVID-19." https://governor.hawaii.gov/wp-content/uploads/ 2020/05/2005088-ATG_Eighth-Supplementary-Proclamation-for-COVID-19-distribution-signed.pdf (last visited July 22, 2020).

In his Ninth Supplementary Proclamation issued on June 10, 2020, Defendant Ige extended the interstate quarantine until July 31, 2020. *See* https://governor.hawaii.gov/wp-content/uploads/2020/06/2006097A-ATG_Ninth-Supplementary-Proclamation-COVID-19-distribution-signed.pdf (last visited July 22, 2020).

On June 25, 2020, Defendant Ige announced the August 1, 2020 implementation of the trans-Pacific pre-testing program, which allows travelers to avoid quarantine by supplying a negative COVID-19 test obtained within 72 hours of arrival in Hawaiʻi. ECF No. 25-6 (Decl. of Bruce S. Anderson, Ph.D) ¶ 8. Those with temperatures exceeding 100.4 or exhibiting other signs of infection will undergo secondary screening and be offered a COVID-19 test. *Id.* Due to uncontrolled outbreaks in the continental United States, an increase in Hawaii's cases, interruption to testing supplies, and an anticipated uptick in cases when schools reopen in August, Defendant Ige delayed the program until September 1, 2020. *See* https://governor.hawaii.gov/newsroom/latest-news/office-of-the-

governor-news-release-governor-ige-announces-pre-trav/ (last visited July 22,

2020).  He correspondingly extended the quarantine until September 1, 2020 in a

Tenth Supplementary Proclamation issued on July 17, 2020.  *See* https://governor.

hawaii.gov/wp-content/uploads/2020/07/2007090-ATG_Tenth-Supplementary-

Proclamation-for-COVID-19-distribution-signed.pdf (last visited July 22, 2020).

II.    Procedural History

        Plaintiff commenced this action on July 10, 2020, suing Defendant Ige and

the State (collectively, "Defendants"), alleging that Defendant Ige's

Emergency Proclamations violate his and his family's due process, equal

protection, and liberty rights under the Fourteenth Amendment.  Compl. at 3–5.

Plaintiff requests an injunction preventing the enforcement of the quarantine for

himself and his family, as well as $300.25 in damages for each day they are subject

to quarantine and $25,000.00 in punitive damages.  *Id.* at 6.

        Plaintiff filed the present Motion on July 13, 2020.  ECF No. 6.

## LEGAL STANDARD

        To obtain preliminary injunctive relief, a plaintiff must establish:  (1) a

likelihood of success on the merits; (2) a likelihood of irreparable harm in the

absence of preliminary relief; (3) the balance of equities tips in favor of the

plaintiff; and (4) an injunction is in the public interest.  *See Winter v. Nat. Res. Def.*

*Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).  Where, as here, the

government is a party, the last two factors merge.  *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The Ninth Circuit also employs a "sliding scale" approach to preliminary injunctions, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  The issuance of a preliminary injunction may be appropriate when there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.* at 1135.

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"; it is "never awarded as of right."  *Winter*, 555 U.S. at 22, 24 (citations omitted).  "[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,'" and should be particularly mindful, in exercising their sound discretion, of the "public consequences in employing the extraordinary remedy of injunction."  *Id.* at 24 (citations omitted).

Moreover, mandatory injunctions ordering affirmative action by a defendant, which is what Plaintiff requests here, go "well beyond simply maintaining the status quo . . . [and are] particularly disfavored."  *Marlyn Nutraceuticals, Inc. v.*

*Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quoting

*Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979), *as amended*

(1980)).  Mandatory injunctions are "subject to heightened scrutiny and should not

be issued unless the facts and law clearly favor the moving party," *Dahl v. HEM*

*Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (citation omitted), or "extreme or

very serious damage will result."  *Park Vill. Apartment Tenants Ass'n v. Mortimer*

*Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011) (citation omitted).  They "are not

issued in doubtful cases."  *Id.* (citation omitted).  "The court's finding of a strong

likelihood that plaintiffs would succeed on the merits of their claims also evidences

a conclusion that the law and facts clearly favor plaintiffs, meeting the requirement

for issuance of a mandatory preliminary injunction."  *Katie A., ex rel. Ludin v. Los*

*Angeles County*, 481 F.3d 1150, 1157 (9th Cir. 2007) (citation omitted).

<u>DISCUSSION</u>

Plaintiff requests an injunction exempting him and his family[3] from the 14-

day quarantine.  ECF No. 6 at 1.  The Court notes that it recently addressed similar

---

[3]  Plaintiff's wife and children are not parties to the action.  Thus, any relief could
only be awarded to Plaintiff.  Moreover, even if Plaintiff named his family as
parties, he could not act on their behalf, because he is not an attorney.  *See* Compl.
at 2 ("I am not a lawyer[.]").  "[A] non-lawyer 'has no authority to appear as an
attorney for others than himself.'"  *Johns v. County of San Diego*, 114 F.3d 874,
877 (9th Cir. 1997) (citation omitted).  This extends to parents and their minor
children.  *See id.* (holding that "a parent or guardian cannot bring an action on
behalf of a minor child without retaining a lawyer").

challenges to the Emergency Proclamations in *Carmichael v. Ige*, Civil No. 20-00273 JAO-WRP, 2020 WL 3630738 (D. Haw. July 2, 2020).  Because Plaintiff does not present any persuasive arguments or authority requiring the Court to depart from the *Carmichael* order, much of the analysis herein mirrors *Carmichael*.

I.     Plaintiff is Not Entitled to Injunctive Relief

      A.     Strong Likelihood of Success on the Merits/Serious Questions Going to the Merits

Defendants argue that Plaintiff has not established a likelihood of success on the merits because his claims are barred by the Eleventh Amendment and fail under *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), and the Equal Protection Clause.

          1.     Eleventh Amendment Immunity

To the extent Plaintiff seeks damages from Defendants, his claims are barred by the Eleventh Amendment.  "The Eleventh Amendment shields unconsenting states from suits in federal court," *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 974 (9th Cir. 2015) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)), and bars individuals from bringing lawsuits against a state or an instrumentality of a state for monetary damages or other retrospective relief.  *See Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016).  Furthermore, it "applies regardless of the nature of relief sought and extends to state instrumentalities and agencies."  *Krainski v. Nevada ex rel. Bd. of Regents of*

8

*Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) (citing *Papasan v. Allain*, 478 U.S. 265, 276 (1986)).  Suits against state officials in their official capacities are likewise barred because they constitute suits against the state itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Eleventh Amendment immunity is not absolute, however.  Congress may abrogate a state's immunity, or a state may waive immunity.  *See Clark v. California*, 123 F.3d 1267, 1269 (9th Cir. 1997).  And under the *Ex parte Young* exception, "private individuals may sue state officials in federal court for *prospective* relief from ongoing violations of federal law, as opposed to money damages, without running afoul of the doctrine of sovereign immunity."  *Koala v. Khosla*, 931 F.3d 887, 895 (9th Cir. 2019) (citing *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011)).  *Ex parte Young* is based on the proposition "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes."  *Va. Office for Prot. & Advocacy*, 563 U.S. at 255 (citation omitted).  It does not apply "when 'the state is the real substantial party in interest.'"  *Id.* (citation omitted).  Thus, while the Eleventh Amendment bars Plaintiff from seeking prospective injunctive relief against the State, he may pursue his claims against Defendant Ige for prospective injunctive relief from ongoing violations of his Fourteenth Amendment rights.

9

2.     Fourteenth Amendment Violations

As in *Carmichael*, Chief Justice Roberts' concurrence in *South Bay United*

*Pentecostal Church v. Newsom* informs the Court's analysis.  140 S. Ct. 1613

(Roberts, C.J., concurring).  Chief Justice Roberts recognized that the

"Constitution principally entrusts '[t]he safety and the health of the people' to the

politically accountable officials of the States 'to guard and protect.'"  *Id.* (quoting

*Jacobson*, 197 U.S. at 38) (alteration in original).  The latitude of officials "must

be especially broad" when acting "in areas fraught with medical and scientific

uncertainties."  *Id.* (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)).

If officials do not exceed these broad limits, "they should not be subject to second-

guessing by an 'unelected federal judiciary,' which lacks the background,

competence, and expertise to assess public health and is not accountable to the

people."  *Id.* at 1613–14 (quoting *Garcia v. San Antonio Metro. Transit Auth.* 469

U.S. 528, 545 (1985)).  This is particularly true when "a party seeks emergency

relief in an interlocutory posture, while local officials are actively shaping their

response to changing facts on the ground."  *Id.* at 1614.  In such circumstances,

"[t]he notion that it is 'indisputably clear' that the Government's limitations are

unconstitutional seems quite improbable."  *Id.*

Courts presented with emergency challenges to governor-issued orders

temporarily restricting activities to curb the spread of COVID-19 have consistently

applied *Jacobson* to evaluate those challenges.  *See Carmichael*, 2020 WL 3630738, at *5 (collecting cases).  According to *Jacobson*, the liberties secured by the Constitution do "not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint.  There are manifold restraints to which every person is necessarily subject for the common good." *Jacobson*, 197 U.S. at 26.  It is a "fundamental principle that persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state."  *Id.* (citation and internal quotations marks omitted).  When an epidemic of disease threatens the safety of a community's members, it "has the right to protect itself."  *Id.* at 27.  And commensurate with that right is a state's authority "to enact quarantine laws and health laws of every description." *Id.* at 25 (internal quotations marks omitted).

Defendant Ige's Emergency Proclamations—purporting to protect public health during the COVID-19 pandemic—are not susceptible to Plaintiff's constitutional challenges unless they have "no real or substantial relation to" the crisis or are "beyond all question, a plain, palpable invasion of rights secured by the fundamental law."[4]  *Jacobson*, 197 U.S. at 31 (citations omitted).  Indeed, "*Jacobson* instructs that *all* constitutional rights may be reasonably restricted to

---

[4]  Plaintiff argues that *Jacobson* requires the satisfaction of additional factors: (1) reasonableness; (2) not affecting people of other states; and (3) legislative enactment.  ECF No. 6 at 2.  The *Jacobson* test does not include these factors.

combat a public health emergency." *In re Abbott*, 954 F.3d 772, 786 (5th Cir.

2020). And "the judiciary may not 'second-guess the state's policy choices in

crafting emergency public health measures.'" *In re Rutledge*, 956 F.3d 1018, 1029

(8th Cir. 2020) (quoting *Abbott*, 954 F.3d at 784).

a.   Real or Substantial Relation to Public Health

The Court already determined in *Carmichael* that Defendant Ige

successfully demonstrated "that his Emergency Proclamations have a real or

substantial relation to the public health crisis caused by the COVID-19 pandemic."

*Carmichael*, 2020 WL 3630738, at *6 (discussing the Declarations of Dr. Sarah

Park, Hawaii's State Epidemiologist and Dr. Steven Hankins, Lead Coordinator for

Emergency Support Function-8 with the Hawai'i Emergency Management

Agency); *see also* ECF No. 25-3 (Park Decl.) ¶¶ 9, 16–17, 19–20, 28, 30; ECF No.

25-4 (Hankins Decl.) ¶¶ 7, 10–11. The jump in COVID-19 cases and deaths in

Hawai'i since the issuance of the *Carmichael* order lends further support to the

quarantine.[5] And the alarming resurgence of cases on the mainland, both before,

*see* ECF No. 25-3 ¶¶ 22, 29, 40, and after the Court issued *Carmichael* only

buttresses Defendant Ige's position here.

_____

[5] *Compare* https://health.hawaii.gov/coronavirusdisease2019/ (last visited July 22, 2020) (1,418 cases and 24 deaths), *with Carmichael*, 2020 WL 3630738, at *1 (946 cases and 18 deaths as of July 2, 2020) (citation omitted)).

Plaintiff has not attempted to refute Defendant Ige's proffered bases for the
Emergency Proclamations, all of which have a real or substantial relation to public
health.  It is not the Court's role to "usurp the functions of another branch of
government," *Jacobson*, 197 U.S. at 28, by second-guessing the State's bases for
formulating and extending public health and safety measures.  Rather, it is "the
duty of the constituted authorities primarily to keep in view the welfare, comfort,
and safety of the many, and not permit the interests of the many to be subordinated
to the wishes or convenience of the few."  *Id*. at 29.

> b.   Plain, Palpable Invasion of Rights Secured by the
>      Constitution

The Court now considers the second *Jacobson* inquiry:  whether the
Emergency Proclamations are "*beyond question*, in palpable conflict with the
Constitution."[6]  *Jacobson*, 197 U.S. at 31 (emphasis added).  And more precisely,
whether they cause a "plain, palpable invasion" of Plaintiff's Fourteenth
Amendment rights.  *Id.*  The Court concludes they do not, whether under
traditional levels of scrutiny or *Jacobson*'s highly deferential standard.

---

[6]  "Although courts have not yet defined the precise contours of this standard, it
plainly puts a thumb on the scale in favor of upholding state and local officials'
emergency public health responses."  *Prof'l Beauty Fed'n of Cal. v. Newsom*, No.
2:20-cv-04275-RGK-AS, 2020 WL 3056126, at *7 (C.D. Cal. June 8, 2020)
(citation omitted).

13

i.   <u>Due Process</u>

Plaintiff alleges that the quarantine violates his liberty right to free

movement without due process because he is forced to quarantine without

scientific proof that he has contracted or been exposed to COVID-19.  Compl. at 3.

Plaintiff is unlikely to succeed on the merits and fails to raise serious questions

going to the merits.

The substantive component of the Due Process Clause of the Fourteenth

Amendment "protects certain individual liberties from state interference."

*Franceschi v. Yee*, 887 F.3d 927, 937 (9th Cir. 2018) (alteration in original)

(citations omitted).  "[O]nly those aspects of liberty that we as a society

traditionally have protected as fundamental are included within the substantive

protection of the Due Process Clause."  *Id.* (citation omitted).  Therefore,

substantive due process is "largely confined to protecting fundamental liberty

interests, such as marriage, procreation, contraception, family relationships, child

rearing, education and a person's bodily integrity, which are 'deeply rooted in this

Nation's history and tradition.'"  *Id.* (citations omitted); *see also Engquist v. Or.*

*Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007) ("A threshold requirement to a

substantive or procedural due process claim is the plaintiff's showing of a liberty

or property interest protected by the Constitution." (citation omitted)).

14

Plaintiff cannot show that a lack of opportunity to prove that he is not infected with COVID-19 violates his due process rights.  Plaintiff appears to contend that Defendant Ige's actions amount to a constitutional violation under *Jacobson* because he imposed the quarantine, a complete restraint, in lieu of other "partial restraints" like face masks and social distancing.  ECF No. 6 at 2–3.  But the Emergency Proclamations have mandated social distancing and the use of face masks.  And even if they did not, the use of masks and social distancing—which are not restraints—address different concerns than the quarantine.  Mask use and social distancing are employed to minimize the spread of COVID-19 within the community as businesses and activities resume, while the quarantine seeks to limit the *importation* and spread of COVID-19.  As here, a temporary quarantine can be instituted in certain areas when evidence shows that unlimited travel there would directly and materially interfere with the safety and welfare of that area.  *See Zemel v. Rusk*, 381 U.S. 1, 15–16 (1965).

Even applying strict scrutiny,[7] the quarantine is "narrowly tailored to promote a compelling governmental interest."  *Nunez ex rel. Nunez v. City of San Diego*, 114 F.3d 935, 946 (9th Cir. 1997) (citing *Plyler v. Doe*, 457 U.S. 202, 217 (1982)); *see Soto-Lopez*, 476 U.S. at 904 & n.4 (citations omitted).  Defendant Ige

---

[7]  The Court is skeptical that strict scrutiny applies because Plaintiff has not identified a legitimate fundamental interest.

imposed the quarantine to prevent the importation and spread of COVID-19 and to avoid overwhelming the health care system, which are compelling state interests. And the quarantine is narrowly tailored because asymptomatic individuals can spread the disease, COVID-19 has an estimated 14-day incubation period, and despite Plaintiff's belief to the contrary,[8] it is unclear that there are less restrictive means to achieve Defendant Ige's stated interests.

Although Defendant Ige has delayed the trans-Pacific pre-testing program until September 1, 2020, once executed, it will allow travelers to waive the

---

[8] Plaintiff argues that the 14-day quarantine is not the least restrictive means because:  (1) per the Centers for Disease Control ("CDC"), 14 days is the maximum incubation period for COVID-19, with 97.5% of individuals developing symptoms within 11.5 days and a median time of four to five days from exposure to symptom onset; and (2) individuals subject to federal public health orders have the right to have quarantine reassessed after 72 hours.  Compl. at 4.  Plaintiff additionally contends that Defendants cannot prove that an increase in cases is attributable to a spread in the disease as opposed to an increase in testing.  ECF No. 26 at 2.  Plaintiff has not suggested that he has expertise in the medical or infectious disease fields, and has not offered an expert opinion on the quarantine's necessity, so the Court rejects his personal opinions about whether COVID-19 is in fact spreading or what constitutes the least restrictive means for Defendant Ige to minimize the spread of COVID-19.  Defendant Ige imposed the 14-day period (versus a five-day or 11.5-day quarantine) at the recommendation of Hawaii's State Epidemiologist.  ECF No. 25-3 ¶ 20 (selecting 14 days because it is the maximum incubation period and an individual not showing symptoms at the end of the period would be extremely unlikely to remain infectious).  And testing all arriving travelers upon arrival or at some point thereafter is simply unfeasible at this time "due to unstable test and personal protective equipment supplies and insufficient laboratory capacity, both public and private laboratories combined." *Id.* ¶ 25.

quarantine requirement if they obtain a negative COVID-19 test within 72 hours of arrival and provide proof upon landing.[9]  ECF No. 25-6 ¶ 8.  Any traveler exhibiting signs of infection will undergo secondary screening and be offered a COVID-19 test at the airport.  *Id.*  Accordingly, based on the record presently before it, the Court finds that the quarantine survives strict scrutiny and Plaintiff cannot *at this time* establish a likelihood of success or raise a serious question going to the merits of his due process claim.

## ii.   Equal Protection

Plaintiff alleges that the quarantine violates his equal protection rights because travelers who have been at sea for 14 days are exempt, as are travelers arriving from August 1, 2020 who can provide negative COVID-19 test results.[10] ECF No. 6 at 3; Compl. at 5.  For the first time in his Reply, Plaintiff challenges the exemption granted to students attending college.  ECF No. 26 at 4.  The Court declines to consider this argument because it is not presented in the Complaint.[11]

---

[9]  The future implementation of the trans-Pacific pre-testing program does not undercut the reasonableness of the restrictions currently in place.  What will be feasible in September is not viable now because certain benchmarks have yet to be met.  ECF No. 25-3 ¶ 28.  As seen in the short time since the Court decided *Carmichael*, circumstances can change dramatically, requiring adjustments.

[10]  As discussed, Defendant Ige has delayed the trans-Pacific pre-testing program until September 1, 2020.

[11]  The Court recognizes that the exemption arose after Plaintiff filed his Complaint, but he cannot amend his claims through a Reply brief.

17

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler*, 457 U.S. at 216).  The Supreme Court has "repeatedly held that 'a classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between disparity of treatment and some legitimate governmental purpose.'" *Cent. State Univ. v. Am. Ass'n of Univ. Professors*, 526 U.S. 124, 127–28 (1999) (alteration in original) (citations omitted); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000).

Plaintiff's allegations do not implicate any fundamental rights or suspect classifications and there is a rational relationship between Defendant Ige's classifications and the legitimate purpose of protecting the health of Hawaii's residents and visitors.  Unlike travelers arriving by plane, individuals arriving by recreational boat after 14 or more days at sea have effectively completed a quarantine.[12]

---

[12]  Plaintiff mistakenly views the mode of transportation as the distinguishing factor, *see* ECF No. 26 at 4, when it is the 14-plus days of isolation that excepts

(continued . . .)

Regarding the trans-Pacific pre-testing program, legitimate reasons exist for establishing a future implementation date.  It is part of a multilayered risk mitigation strategy, designed to limit the COVID-19 risk to a level that is manageable for Hawaii's healthcare infrastructure.  ECF No. 25-6 ¶ 7.  Plaintiff's expectation that the program is long overdue—or at a minimum should be selectively available to him before other travelers—does not make the quarantine unconstitutional.

Plaintiff questions Defendant Ige's motivations for continuing to "oppress" travelers through quarantine because Dr. Bruce Anderson, Director for the Hawaiʻi Department of Health, confirmed in a June 25, 2020 declaration that the State has been prepared to manage the risk posed by reopening to travelers.  ECF No. 26 at 5.  But Dr. Anderson did not confirm that the State was already prepared; rather, he said the State had been working tirelessly to reopen safely and to develop a multilayered mitigation strategy.  ECF No. 25-6 ¶¶ 6–7.  He represented that the State was still finetuning the trans-Pacific pre-testing program which—when

_____

(. . . continued)
recreational boaters arriving in Hawaiʻi from the quarantine.  Interestingly, Plaintiff presents a hypothetical under which travelers by recreational boat would be infectious for longer than 14 days if an individual infects another individual on day 10 of the journey.  Compl. at 5.  Yet for his family's purposes, he suggests that the number of days from exposure to symptom onset would be far fewer than that mandated by the quarantine, *see id.* at 4, notwithstanding their exposure to countless people during their travel to Hawaiʻi.

coupled with the other layers of the risk mitigation strategy such as robust contract tracing, thermal scanning, and health questionnaires—could sufficiently mitigate the risk. *Id.* ¶¶ 7, 10. Notably, the declaration is from approximately one month ago and circumstances have since changed. Any suggestion that Defendant Ige is currently acting contrary to Dr. Anderson's representations from last month is unsupported. For these reasons, Plaintiff cannot establish a likelihood of success on the merits of his equal protection claim nor has he raised serious questions going to the merits.

In sum, Plaintiff fails to show a likelihood that he would succeed on the merits of his claims, let alone a strong likelihood of success, as is required for a mandatory injunction. Plaintiff similarly fails to raise serious questions going to the merits of any of his claims. Consequently, Plaintiff is not entitled to injunctive relief.

B.   Irreparable Harm

"At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted). As a prerequisite to injunctive relief, "a plaintiff must *demonstrate* immediate threatened injury"; a speculative injury is not irreparable. *Id.* (citations omitted). "Irreparable harm is . . . harm for which there is no adequate legal remedy, such as

an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citation omitted). "[A]n alleged constitutional infringement will often alone constitute irreparable harm," *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (citation omitted), but not if "the constitutional claim is too tenuous." *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984).

Plaintiff argues only that he and his family suffer irreparable harm every moment they remain quarantined. ECF No. 6 at 1. He urges:

> No amount of money can adequately compensate us for the loss of time, enjoyment, and liberty we have lost; not to mention the emotional distress we have experienced being treated like prisoners[13] in our own country without any proof that we violated any law or were, under the circumstances, infected with COVID-19 or other communicable disease.

*Id.* at 1–2. These conclusory and unsubstantiated allegations fail to establish irreparable harm. Plaintiff knew full well that Hawaiʻi has a mandatory 14-day quarantine *before* he traveled here. Yet he *voluntarily* decided to proceed with his vacation.

C.   Balance of Equities/Public Interest

Plaintiff contends that the imposition of the requested injunction would cause little personal hardship to Defendant Ige and that he has had more than

---

[13] The Court observes that prisoners are not typically confined in vacation rentals.

sufficient time to develop and execute a plan to reopen the State to visitors.  ECF

No. 6 at 3.  In assessing whether Plaintiff establishes that the balance of equities tip

in his favor, "the district court has a 'duty . . . . to balance the interests of all parties

and weigh the damage to each.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138

(9th Cir. 2009) (citation omitted).  When an injunction's impact "reaches beyond

the parties, carrying with it a potential for public consequences, the public interest

will be relevant to whether the district court grants the preliminary injunction."  *Id.*

at 1139 (citations omitted).  "The public interest inquiry primarily addresses

impact on non-parties rather than parties."  *League of Wilderness Defs./Blue*

*Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014)

(citation omitted).  It also requires the Court to "consider whether there exists some

critical public interest that would be injured by the grant of preliminary relief."

*Cottrell*, 632 F.3d at 1138 (citation omitted); *Stormans*, 586 F.3d at 1139

("[C]ourts . . . should pay particular regard for the public consequences in

employing the extraordinary remedy of injunction." (citation omitted)).

Here, the equities weigh heavily against Plaintiff.  Notwithstanding his

efforts to paint a picture of undue suffering and hardship, Plaintiff's primary

grievance is that he cannot enjoy all 36 days of his Hawaiʻi vacation without

restrictions.[14]  Again, Plaintiff knew about the mandatory quarantine but decided to travel here anyway and now asks to be exempted from a requirement imposed on all incoming travelers, including residents, merely because he purportedly has no symptoms of COVID-19,[15] is *not aware*[16] of being exposed to anyone with COVID-19, and *believes* he is not a danger to public health in Hawai'i.  ECF No. 6 at 1.

Plaintiff's desire to obtain preferential treatment for himself and his family cannot override the community's interest in preserving its health and well-being. Plaintiff's assertion that the requested injunction would not cause hardship to Defendant Ige is not well taken.  The quarantine is meant to protect Hawai'i and Plaintiff's premature release from quarantine could cause harm to the community, as there is no assurance he is not infected with COVID-19.

---

[14]  Plaintiff also points to the $10,508.68 price tag for his vacation rental, but the Court is confused as to how Plaintiff's decision to expend those funds furthers his argument.

[15]  One of the most concerning aspects of COVID-19 is that asymptomatic individuals can transmit the disease.  ECF No. 25-3 ¶ 12.

[16]  Unawareness is no consolation given South Carolina's COVID-19 numbers, coupled with Plaintiff and his family's possible exposure during their travel from South Carolina to Hawai'i.  *See* https://www.scdhec.gov/infectious-diseases/viruses/coronavirus-disease-2019-covid-19/sc-testing-data-projections-covid-19 (last visited July 22, 2020) (74,761 cases and 1,242 deaths).

Incredibly, Plaintiff contends that visitors are "better experienced in how to avoid getting sick and transmitting COVID-19 to others (such as wearing masks and social distancing), as evidenced by the fact that they originate from areas harder hit than Hawaiʻi and yet remain healthy."  ECF No. 6 at 3–4.  But by "healthy," he really means "without symptoms."  And, as stated, COVID-19's pervasiveness is due in large part to asymptomatic spread.  Plaintiff also posits that the quarantine does not serve the public interest because visitors annually outnumber residents 10.42 million to 1.42 million.  *Id.* at 4.  However, the ability for visitors to vacation without a quarantine does not outweigh residents' rights to health and safety.  This community, not visitors, would bear the public consequences of a COVID-19 outbreak, which would quickly overwhelm Hawaii's healthcare system and resources, and Hawaii's geographical isolation would further exacerbate the crisis.  The quarantine has arguably allowed Hawaii's COVID-19 numbers to remain among the lowest in the nation.  *See* https://www.npr.org/sections/health-shots/2020/03/16/816707182/map-tracking-the-spread-of-the-coronavirus-in-the-u-s (last visited July 22, 2020).

In these unprecedented times, it is not the Court's role to second-guess the decisions of state officials who have the expertise to assess the COVID-19 pandemic and institute appropriate measures to minimize its impact to this community.  *See Stormans*, 586 F.3d at 1139 ("[When] an injunction is asked

24

which will adversely affect a public interest . . . the court may in the public interest

withhold relief until a final determination of the rights of the parties, though the

postponement may be burdensome to the plaintiff." (alteration in original) (citation

omitted)).  Under these circumstances, an injunction granting Plaintiff an early

release from quarantine would not be in the public's interest.

CONCLUSION

For the reasons stated herein, the Court HEREBY DENIES Plaintiff's

Motion for Preliminary Injunction.  ECF No. 6.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, July 22, 2020.



Jill A. Otake
United States District Judge

CIVIL NO. 20-00305 JAO-RT; *Bannister v. Ige, et al.*; ORDER DENYING PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION